**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

IN RE:

ROSEMARIE CURCIO,                                            CASE NO.: 07-10158-LMK

  Debtor.                                                              CHAPTER: 7
_____/

**ORDER DENYING THE CREDITORS' MOTION TO DISMISS FOR ABUSE**

    THIS MATTER is before the Court on the Motion to Dismiss Case for Abuse (Doc. 35) filed by the creditors, Timothy and Migdalia Quinn (the "Creditors"). The Creditors assert that the Debtor's petition constitutes abuse pursuant to 11 U.S.C. § 707(b)(1), and the Court should dismiss the case. The Court received evidence and heard the argument of counsel at the evidentiary hearing held on February 7, 2008, and for the reasons explained herein, the Motion is denied. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. Pursuant to Rule 7052, I make the following finding of facts and conclusions of law.

Facts and Background of this Case

    On June 15, 2007, the Debtor filed her Voluntary Petition under Chapter 7 commencing this case. The Debtor resides with her son and her domestic partner of eleven years, Ms. Nichole Curcio ("Ms. Curcio"). At the time of the filing, the Debtor and Ms. Curcio owned two houses. One is a former residence in Palm Harbor, Florida where the Debtor had lived prior to May 2006. The Debtor and Ms. Curcio made plans to move to Gainesville, Florida and put their Palm Harbor property up for sale. Before the Palm Harbor property was sold, the Debtor and Ms. Curcio moved into their new home in Gainesville. However, due to a downturn in the real estate market, the Palm Harbor property was never sold. The Debtor and Ms. Curcio remained liable

1

for the two mortgages on the Palm Harbor property, and they took on two additional mortgages for their new home. Subsequently, on March 13, 2007, the Debtor was forced to resign from her job.

Five days after the Debtor lost her job, she was involved in a car accident while making a U-turn into oncoming traffic. Mr. Quinn, one of the Creditors, sustained a serious, debilitating injury from the accident. The Debtor has not been found at fault for the accident, nor has she admitted fault. The Creditors, through their personal injury attorney, sent the Debtor a settlement offer to settle their personal injury case for $150,000, but the offer was never accepted. To this date, the Creditors hold an unliquidated and disputed claim against the Debtor, and the Debtor estimates the amount of claim to be $500,000. The Creditors initially filed a proof of claim in the amount of $10 million claim based on personal injury, but they subsequently filed an amended proof of claim to reduce the amount to $500,000.

On June 15, 2007, approximately three months after the accident, the Debtor filed her Bankruptcy petition. On her Form 22A – Statement of Current Monthly Income and Means Test Calculation, the Debtor indicated that her household consists of three persons, and she included her federal income tax refund in the amount of $6,951 in the calculation of Current Monthly Income ("CMI"). The Debtor indicated that her annualized CMI is less than the median family income for a Florida household with three persons. The Creditors subsequently moved to dismiss for abuse pursuant to § 707(b)(1), asserting that the Debtor's conduct constituted an "abuse" under the totality of circumstances pursuant to § 707(b)(3). The Creditors assert that the Debtor had made material misrepresentations because her household in fact consists of two persons, rather than three, and the Debtor should have included the proceeds from a sale of non-homestead property in the CMI. The Creditors point out that the Debtor's CMI would be above the median family income for a Florida household with two persons if the proceeds were in-

2

cluded. Moreover, the Creditors point to large mortgage payments and assert that the Debtor's expenses are in excess of reasonable and necessary amounts. During the hearing held on November 2, 2007, the parties agreed that the Debtor's household size would be two for purposes of the Means Test; however, the issue of the proceeds was not resolved.

The proceeds from the sale of non-homestead property to which the Creditors refer in their motion involves a house that was acquired by Ms. Curcio for her father, Mr. Romer (the "Romer property"). Mr. Romer was unable to finance the purchase in his name so Ms. Curcio purchased it for him. While Ms. Curcio provided financial assistance to her father, he made the payments for the mortgage, taxes, and insurance on the house. The Debtor's name was placed on the deed for "emergency/estate planning purposes" according to Ms. Curcio's testimony. She was concerned that if "something happened to her," the house would be in jeopardy. By putting the Debtor's name on it, she could trust that his interest would be protected.

In April 2007, Mr. Romer was able to obtain financing to "purchase" the house in his own name. After paying off the existing mortgage with the refinancing, there was an additional $14,000 in equity which was paid to Ms. Curcio. This was paid to her to reimburse her for expenses she had incurred for repairs to the property. The check was payable to Ms. Curcio and was deposited in the joint checking account with the Debtor. It is these proceeds which the Creditors argue should have been included in the Debtor's CMI calculation.

The Debtor argues that the proceeds from the sale do not constitute income because she had no equitable interest in the property, or at the most, only half of the proceeds could be attributed to the Debtor's income for the Debtor's half legal interest in the property. Although the Creditors assert that the proceeds should be included in the calculation of CMI because the proceeds were used to pay joint household expenses, the evidence shows that the Debtor held no

equitable interest in the property, and the proceeds were used solely by Ms. Curcio to repay her debt.

### Discussion

At the center of this matter is § 707(b) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, which created a complex set of rules for dismissal of a Chapter 7 case. In order to address this matter, the Court should begin with a brief description of the statute from which this case arises. A Chapter 7 case filed by an individual whose debts are primarily consumer debts is subject to dismissal "if [the Court] finds that the granting of relief would be an *abuse*..." 11 U.S.C. § 707(b)(1) (emphasis added). "The court, on its own motion, or on a motion by . . . *any party in interest*" may move to dismiss for abuse. *Id.* (emphasis added). "'Abuse,' in turn, may be determined pursuant to either § 707(b)(2) or § 707(b)(3)." *In re Hayes*, 376 B.R. 55, 58 (Bankr.D.Mass. 2007). Section 707(b)(2) "sets forth a detailed mathematical 'formula' for determining whether a 'presumption of abuse' has arisen," and the formula is commonly referred to as the "Means Test." *Id.* It "creates a presumption of abuse under certain circumstances when a debtor's disposable income exceeds fixed amounts." *In re Singletary*, 354 B.R. 455, 460 (Bankr.S.D.Tex. 2006). Section 707(b)(3), on the other hand, looks to the totality of circumstances to determine abuse when the presumption of abuse does not arise under § 707(b)(2).

However, § 707(b)(6) provides that "only the judge or the United States trustee" may move to dismiss under § 707(b) if the debtor's CMI falls below the state median income for a household of the same size. In effect, § 707(b)(6) creates a threshold test to determine whether a "party in interest," other than the Court or the US Trustee may bring a motion to dismiss for abuse under § 707(b); that is, a "party in interest" is not eligible to bring a motion to dismiss un-

4

der § 707(b) if the debtor's CMI is below the applicable median income. Therefore, before determining the issue of abuse on its merits, I must first determine the eligibility of the Creditors to bring this motion.

If the Debtor's annualized CMI falls below the applicable median income, the Creditors are not eligible to bring a motion to dismiss under § 707(b). Resolution of this issue depends on whether the Debtor's federal income tax refund or the proceeds from sale of the Romer property should be included in the calculation of CMI. Neither party has grasped the importance of these issues. However, the inclusion or exclusion of either affects the eligibility of the Creditors to bring a motion to dismiss under § 707(b). Section 101(10A) defines CMI, in pertinent part, as

> (A) . . . the average monthly *income* from all sources that the debtor *receives* . . . without regard to whether such income is taxable income, derived during the 6-month period . . .
> (B) includes any amount paid by any entity other than the debtor . . . on a *regular basis* for the *household expenses* of the debtor or the debtor's dependents . . .

§ 101(10A) (emphasis added). The plain language of § 101(10A)(A) provides the requirements for CMI: the amount at issue must be both "income" and "received." Therefore, any amount the debtor "receives" but that is not "income," and any "income" that the debtor does not "receive" cannot be included in the calculation of CMI. Moreover, any amount paid by any entity other than the debtor is not included in the calculation of CMI unless such amount is used for household expenses and received on a regular basis. *See* § 101(10A)(B).

The Bankruptcy Code does not define "income," and the legislative history for § 101(10A) does not provide any meaningful guidance. "[W]here the interpretation of a particular statute at issue is in doubt, the express language and legislative construction of another statute not strictly in pari materia but employing similar language and applying to similar . . . things . . . may control by force of analogy." *Stribling v. U.S.*, 419 F.2d 1350, 1352-53 (8th Cir., 1969); *see also Overstreet v. North Shore Corp.*, 318 U.S. 125, 131-32 (1943) (comparing unrelated statutes

5

using the same phrase for interpretative guidance); 2B Sutherland Statutory Construction § 53:3 (6th ed., 2007). The Court may refer to the Internal Revenue Code for general guidance for determining what "income" means under § 101(10A)(A). Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231, 244-45 (2005).

The Internal Revenue Code is a good source to look for guidance "because § 101(10A)(A) distinguishes between 'income from all sources' and 'taxable income,' [which] appears to reflect the distinction in the Internal Revenue Code between 'gross income,' and 'taxable income.'" *See* Wedoff, *supra*, at 245; 28 U.S.C. § 61(a) ("gross income" means all income from whatever source derived); 28 U.S.C. § 63(a) ("taxable income" means gross income minus the deductions allowed). Moreover, as a matter of common sense, the Internal Revenue Code would provide better guidance in determining whether a certain transaction produces "income" than any other section of the U.S. Code. Accordingly, the term "income" as referred to in the Internal Revenue Code "may control by force of analogy" and provides general guidance for determining the "income" used in § 101(10A)(A). *See Stribling*, 419 F.2d at 1352-53. Hence, "income" for CMI purposes is broadly construed as pre-tax income from all sources, similar to "gross income" under the Internal Revenue Code.

*Should the federal income tax refund be included in the calculation of CMI?*

A federal income tax refund should not be included in the calculation of CMI. First, a federal income tax refund is not "income" under the Internal Revenue Code. When a taxpayer earns wages from an employer, the employer is required to "deduct and withhold upon such wages a tax determined in accordance with tables or computational procedures prescribed by the [Treasury] Secretary," subject to other exceptions. 26 U.S.C. § 3402(a)(1); *IRS Form W-4* (table

to determine withholding amount)[FN1]. The amount so withheld is remitted to the Internal Revenue Service by the employer on behalf of the taxpayer/employee, and the remittance is considered a "payment *on account* of the income tax." Treas. Reg. § 301.6315-1 (emphasis added). In other words, the amount withheld is deposited into an account, and the Federal Government owes the taxpayer the amount in the account until actual taxes are assessed. Then, after the taxes are assessed, the Federal Government repays to the taxpayer the remaining balance, and this repayment is referred to as a tax refund. The tax refund is simply a repayment of debt, hence it does not constitute income.

Furthermore, the tax refund was not "received" when it was repaid by the government to the Debtor because it was part of the wages from which the refund originated. In other words, the gross wages are "received" when paid by the employer; certain amounts are withheld and deposited with the Internal Revenue Service to be credited against the tax obligations. Even though the Debtor never actually received cash for the amount withheld, the Debtor in effect "received" the gross wages, and her employer then deposited the withholding on behalf of the Debtor with the Internal Revenue Service. It is well established that a tax refund attributable to prepetition income is a prepetition asset that is property of the estate. *See, e.g., In re Carpenter*, 367 B.R. 850, 855 (Bankr. M.D. Fla. 2006); *In re Marvel*, 372 B.R. 425, 429-34 (Bankr. N.D. Ind. 2007). Therefore, the tax refund is part of the gross wages received at the time of payment of such wages, and it is not to be included in the calculation of CMI.

Although there is no case law that conclusively determines whether the tax refund should be included in CMI for the purposes of § 707(b), case law does exist which determines the tax refund should not be included in CMI for the purposes of § 1325. *In re Johnson*, 346 B.R. 256 (Bankr.S.D.Ga. 2006). "Section 1325(b) treats [CMI] as the input for determining 'disposable

---

[FN1] http://www.irs.gov/pub/irs-pdf/fw4.pdf

7

income.'" *Id.* at 263. The court in *Johnson* held that if the previous year's tax refunds were included, then the "disposable income," or CMI, would be inaccurately skewed. *Id.* at 269. To calculate the CMI, gross income before any deductions is used as a starting point. Including the tax refund in the gross income would create a double accounting problem, because the amount of tax refund was already included as 'income.' *See id.* Therefore, the tax refund should not be included in the calculation of CMI.

*Should the proceeds from sale of the Romer property be included in the calculation of CMI?*

The next issue is whether the proceeds from sale of the Romer property should be included in the calculation of CMI. First, I must determine whether any part of the proceeds were "received" by the Debtor. If the proceeds were not "received," the amount cannot be included in the calculation of CMI. *See* § 101(10A)(A). However, even if the amount was "received," it must constitute "income" to be included in the calculation of CMI, and the Internal Revenue Code should, again, provide general guidance. The Internal Revenue Code broadly defines "gross income," and the Supreme Court has held that any "undeniable accessions to wealth, clearly realized, and over which the taxpayer have complete dominion" constitute "income." *Comm'r of Internal Revenue v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955); *Collins v. Comm'r of Internal Revenue*, 3 F.3d 625, 630 (2d Cir. 1993); *Westpac Pac. Food v. Comm'r of Internal Revenue*, 451 F.3d 970, 975 (9th Cir. 2006). However, the return of capital does not constitute income. *Doyle v. Mitchell Bros.*, 247 U.S. 179, 184-85 (1918); *see Comm'r of Internal Revenue v. Meyer*, 139 F.2d 256, 258-59 (6th Cir. 1943). A gain realized on the sale of property does constitute income, and "in order to determine whether there has been gain or loss, and the amount of the gain if any, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed at the commencement . . . ." *Doyle*, 247 U.S. at 185.

Hence, a court must determine whether an amount constitutes a "gain" in order to determine whether such amount constitutes "income."

Here, the issue is whether the Debtor received any income, or realized gain, from the sale of the property. Determination of the exact dollar amounts of gain and return of capital is not necessary here because none of the proceeds constitute "income" of the Debtor. A substantial portion of the proceeds is likely to constitute return of capital, and such amount is not attributable to "income." *See Doyle*, 247 U.S. at 185. Even though the check for the proceeds was deposited into the joint account which the Debtor held with Ms. Curcio, such amount does not constitute "income" under the Internal Revenue Code because the proceeds do not meet the test under *Glenshaw Glass*, 348 U.S. at 431. First, the Debtor did not enjoy any "undeniable accessions to wealth" because she held no equitable interest in the property from which the proceeds originated. Second, the Debtor did not have "complete dominion" over the proceeds because Ms. Curcio used the entire proceeds to pay her debt. Even though the Creditors argue (without any evidentiary support) that the proceeds were in fact used to pay household expenses, the purpose for which the proceeds were used does not determine the outcome of this case. Section 101(10A)(B) may only be applied if the proceeds are received "on a regular basis." The sale proceeds here arose from a one-time transaction.

Moreover, even if a portion of the proceeds would qualify as "income," the Debtor could not have "received" any proceeds because she held no equitable interest in the property. The property was purchased by Ms. Curcio for the benefit of her father. Moreover, Ms. Curcio's father resided in the property while making payments for the mortgage and other associated costs. The facts in record indicate that the Debtor neither made any financial contribution toward the property nor had any stake in the property. The Debtor's name was added to the deed solely to accommodate Ms. Curcio's "emergency/estate planning" needs, where the Debtor acquired a

9

bare legal interest in the property. Furthermore, the check for the proceeds was made payable solely to Ms. Curcio. The mere fact that the Debtor was a joint holder of the bank account into which the check was deposited is not sufficient proof that the Debtor "received" any part of the proceeds.

It bears mentioning that including the proceeds from a one-time transaction in calculating CMI produces a result that appears to be absurd. Annualized CMI is calculated by dividing the total income received during six months preceding the petition by six, and then multiplying the result by twelve. *See* § 101(10A)(A); § 707(b)(6). Adding one-time proceeds may cause a debtor's income to appear above the median income even if the debtor's total annual income is below median. If the one-time proceeds are annualized, the annualized CMI would include twice the amount of the proceeds actually received by the Debtor because the income is divided by six and then multiplied by twelve.

### *Can the Creditors bring this motion?*

Now that the two preliminary determinations have been made, I must determine whether the Creditors are eligible under § 707(b)(6) to move to dismiss. If the Debtor's CMI falls below the threshold, that is, the applicable state median income, § 707(b)(6) bars the Creditors from bringing this motion. When the tax refund and the proceeds are excluded from the CMI calculation, the Debtor's CMI is $3,115.03. Form 22A, Line 12 (Doc. 2). This CMI, annualized, results in $37,380.36. *Id.* at Line 13. Median family income for a household of two persons in Florida is $46,914[FN2]. Therefore, the applicable median family income exceeds the Debtor's annualized CMI by $9,534, and the Creditors are not eligible to bring this motion pursuant to § 707(b)(6).

---

[FN2] *See* http://www.usdoj.gov/ust/eo/bapcpa/20070201/bci_data/median_income_table.htm

For the reasons discussed above, the Creditors are barred from bringing this motion. Accordingly, it is hereby

ORDERED and ADJUDGED that the Creditor's Motion to Dismiss for Abuse is DENIED.

DONE and ORDERED in Tallahassee, Florida this 22nd day of April, 2008.

LEWIS M. KILLIAN, JR.
United States Bankruptcy Judge

cc: all parties in interest